Raymond CHURCH, Appellant,

v.

Stephen TENTARELLI and Caryn
Tentarelli, Appellees.

Superior Court of Pennsylvania.

Argued May 14, 2008.
Filed June 30, 2008.

Emil L. Iannelli, Southampton, for appellant.

Peter M. Hileman, Doylestown, for appellees.

BEFORE: BOWES, GANTMAN and
TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 Raymond Church appeals the aggregate judgment of $24,500 entered on October 19, 2007, in favor of appellees Stephen and Caryn Tentarelli after a jury found both Church and the Tentarellis in breach of contract.

¶ 2 On March 25, 2003, the Tentarellis executed a contract with Church. The terms of the contract required Church to construct a single-family home for the Tentarellis in Schnecksville and contained a detailed list of construction specifica-

tions. The contract called for Church to commence performance in April of 2003 and to complete performance within eight months. Record, No. 1, Complaint, at Exb. A.

¶ 3 By December of 2003, it was clear Church would be unable to complete performance within the time period contemplated by the contract. By letter dated December 9, 2003, Church, already in breach of contract, offered to complete performance by February 27, 2004. Record, Exb. D–7. While awaiting completion of their new home, the Tentarelli family had been living in a rented home. In the spring of 2004, the Tentarellis informed Church their lease was set to expire, that their landlord was unwilling to extend the lease term and that, as a consequence, they needed to move into their new home as soon as possible. See N.T., 2/16/07, at 15–16. In light of these time constraints, Church agreed that he would attempt to complete performance by April 3, 2004. See id.

¶ 4 On April 3, 2004, the Tentarellis moved into their new home. See N.T., 02/16/06, at 16. The home, however, was still not complete and the Tentarellis were forced to move in under a temporary certificate of occupancy. Id. Church's performance from this point forward was sporadic. N.T., 2/20/07, at 22. Church last performed work on the Tentarelli property on June 17, 2004. See N.T., 2/16/07, at 16.

¶ 5 In mid-July of 2004, the Tentarellis received billing invoices from Church. See

N.T., 02/16/07, at 17. On July 22, 2004, Raymond Tentarelli met with Church at which time Tentarelli provided Church with an extensive list of items which had not been completed as required under the contract. See id. at 18; see also Record, at Exb. P–9. Tentarelli then informed Church his services would no longer be needed. Id. at 17.

¶ 6 On November 12, 2004, Church filed a complaint sounding in breach of contract alleging the Tentarellis had refused to pay him for his work. On January 14, 2005, the Tentarellis answered and counterclaimed alleging Church had not performed the work contemplated under the contract. The controversy was submitted to compulsory arbitration in September of 2006. See generally, 42 Pa.C.S.A. § 7361, **Compulsory arbitration,** (b)(2) **Limitations.** On September 7, 2006, the arbitration panel awarded the Tentarellis $1,062.51 on their counterclaim and Church nothing on his claim. Church filed a timely notice of appeal from the arbitration award and perfected his right to a jury trial.

¶ 7 Trial was conducted in February of 2007. At the conclusion thereof, the jury awarded Church $25,460 on his claim, but also awarded the Tentarellis $49,960 on their counterclaim. As a result, judgment was subsequently entered for the Tentarellis in the amount of $24,500. On February 27, 2007, Church filed a post-trial motion requesting a judgment notwithstanding the verdict (JNOV),[1] and, on March 2,

---

1. Church alleges he filed both a written motion for compulsory non-suit at the close of the Tentarellis' case and a written motion requesting a directed verdict at the close of trial. Appellant's brief at 6. While we were able to locate what appear to be the original motions, indiscriminately stuffed in a large folder containing a pile of exhibits and other documents, the orders denying these motions are not included in the certified record. See

contra Pa.R.A.P.1931, **Transmission of the Record,** (c) **Duty of clerk to transmit the record** (noting the clerk of courts is under a duty to number the documents comprising the certified record and to provide a list identifying the numbering scheme used for, and the nature of, the documents). Further, neither the motions nor the corresponding orders are listed on the lower court docket sheet and the original motions themselves are not

2007, the Tentarellis filed a motion to mold the jury's verdict. By Order dated September 24, 2007, the trial court denied Church's post-trial motion and issued an Opinion outlining its justifications for this denial. On October 5, 2007, the trial court molded the jury's verdict and directed Keystone Nazareth Bank and Trust, which had been holding the proceeds of the construction loan the Tentarellis secured to finance the construction of their home in escrow, to release the escrowed funds to the Tentarellis.

¶ 8 A timely notice of appeal followed and Church was directed to file a Rule 1925(b) statement on October 24, 2007. *See generally*, Pa.R.A.P.1925, **Opinion in Support of Order.** Church complied with the directive in a timely fashion and, on November 8, 2007, the trial court issued a Rule 1925(a) Opinion. Church raises four verbosely worded issues on appeal. In sequence, Church contends the trial court erred in denying his motion for compulsory non-suit, his motion for a directed verdict, and his motion for JNOV. The argument in support of these allegations is duplicative. With respect to the final issue raised, Church contends the trial court erred in molding the verdict by directing Keystone Nazareth Bank to release the escrowed funds to the Tentarellis pending the outcome of this appeal because, if Church should prove successful on appeal, he will be deprived of access to a readily available source of funds to satisfy his judgment.

■■■ ¶ 9 With respect to the first issue raised, our standard of review over the denial of a motion for a compulsory non-suit is well-defined:

A motion for compulsory non-suit allows a defendant to test the sufficiency of a [plaintiff's] evidence and may be entered only in cases where it is clear that the plaintiff has not established a cause of action; in making this determination, the plaintiff must be given the benefit of all reasonable inferences arising from the evidence. When so viewed, a non-suit is properly entered if the plaintiff has not introduced sufficient evidence to establish the necessary elements to maintain a cause of action; it is the duty of the trial court to make this determination prior to the submission of the case to the jury.

A compulsory non-suit is proper only where the facts and circumstances compel the conclusion that the defendants are not liable upon the cause of action pleaded by the plaintiff.

*Mahan v. Am–Gard, Inc.*, 841 A.2d 1052, 1057–1058 (Pa.Super.2003), appeal denied 579 Pa. 712, 858 A.2d 110 (2004), *quoting Poleri v. Salkind*, 453 Pa.Super. 159, 683 A.2d 649, 653 (1996), appeal denied 548 Pa. 672, 698 A.2d 595 (1997).

¶ 10 Church contends: "In order to establish a cause of action for breach of a construction contract by a contractor, the owner must allow the contractor a reasonable time to rectify the alleged defects." Appellant's brief at 11, *citing Hood v. Meininger*, 377 Pa. 342, 105 A.2d 126 (1954). Church contends the Tentarellis failed to establish they gave him the opportunity to cure after terminating him on July 22, 2003, and, as such, he was entitled to a compulsory non-suit on the Tentarellis' counter-claim.

time stamped. *Id.* While it is conceivable the motions were presented orally and disposed of in kind, there is no evidence which would tend to indicate that this is what occurred in the transcripts which were made part of the certified record. Nonetheless, the trial court's September 24, 2007, Order does indicate that at some point Church challenged the denial of a motion for compulsory non-suit he apparently had presented.

¶ 11 Both the legal premise and the factual conclusion of Church's argument are irreparably flawed. Church's reliance on *Hood* is wholly misplaced. *Hood* does not stand for the proposition that a plaintiff must establish he gave a contractor a reasonable opportunity to rectify defects in order to establish a cause of action for breach of a construction contract, and no case of which we are aware cites *Hood* for this proposition. Frankly, we are unaware of any case which stands for this proposition. While cure and mitigation are unquestionably relevant to the issue of damages in a contract dispute as a general matter, there is simply no support in our caselaw for the proposition Church advances. Notably, Church does not contend the Tentarellis' alleged failure to allow him to cure warrants a diminution of the Tentarellis' damage award.

■ ¶ 12 Furthermore, even if we assume Church's reading of *Hood* is apt, the evidence of record establishes Church was given "a reasonable time to rectify the alleged defects." Appellant's brief at 11. To begin with, we do not accept Church's suggestion that the Tentarellis were required to furnish him with a formal written list of defects every time an issue presented itself, and before Church had even completed the job, so that Church could then cure these defects. The business relationship between the Tentarellis and Church was not one between highly sophisticated business entities. The contract says nothing about requiring formal written notification every time a defect became apparent. Verbal notice was sufficient given the circumstances. The record contains unrebutted [2] testimony establishing the Tentarellis brought specific construction defects to Church's attention during the course of the business relationship only to have Church ignore these defects. *See e.g.,* N.T., 2/20/07, at 31–32. This testimony obviously was deemed to be credible by the jury.

■ ¶ 13 The underlying contract called for performance to be completed in December of 2003; Church failed to meet this obligation. The Tentarellis gave Church the opportunity to complete performance by February of 2004 pursuant to Church's own corrective proposal; again, Church failed to meet his obligation. In the spring of 2004, Church promised to complete the construction in a timely fashion, yet once again, he failed to meet his obligation. Without warning, Church then walked off of the job in June of 2004. The Tentarellis, fed up with Church's antics, terminated their relationship with him in July of that year. At that point in time, Church still had not completed the work contemplated by the contract. In sum, the contract called for Church to complete performance within eight months; the Tentarellis gave him an additional seven months to cure. The Tentarellis were not required to give Church an unlimited period of time to complete performance.

¶ 14 Church does not contend the Tentarellis failed to establish any of the elements actually necessary to establish a

---

2. While Church cites to his own testimony in portions of his brief, he decided it would be unnecessary to include the transcripts of this testimony in the certified record. In any event, this testimony is wholly unnecessary to our disposition given that the jury credited the Tentarellis' version of events with respect to the mitigation issue. *See* Rule 1925(a) Opinion, Waite, J., 11/8/07, at 3 ("In the instant matter, [Church] asserts that [the Tentarellis] did not give him a sufficient opportunity to cure. That issue was a major factor at trial. At trial, [the Tentarellis] asserted that [Church] delayed the job for months on end and finally walked off the job. At trial, [Church] asserted that [the Tentarellis] obstructed his completion of the job. The jury chose to accept [the Tentarellis'] version and consequently found for [the Tentarellis].").

breach of contract. *See generally, Pittsburgh Constr. Co. v. Griffith,* 834 A.2d 572, 580 (Pa.Super.2003), *appeal denied* 578 Pa. 701, 852 A.2d 313 (2004) ("To support a claim for breach of contract, a plaintiff must allege: 1) the existence of a contract, including its essential terms; 2) a breach of a duty imposed by the contract; and 3) resultant damage.") (citation omitted). Thus, there can be no question the Tentarellis produced sufficient evidence to establish their breach of contract claim. *See Mahan, supra* at 1057–1058 (citation omitted).

¶ 15 In his next two issues Church next contends the trial court erred in denying his requests for a directed verdict and for JNOV. As noted above, his argument in support of these arguments is duplicative of the argument advanced in support of the first contention raised. Appellant's brief at 13–14. Accordingly, these issues do not warrant further consideration.

¶ 16 In his final issue, Church assigns error to the trial court's decision to direct Keystone Nazareth to release the funds from the Tentarellis' construction loan it was holding in escrow pending this appeal because, in the event he proves successful on appeal, he no longer will have access to a readily available source of funds to satisfy his judgment. Church, however, has failed to establish reversible error. As such, the fourth issue raised is moot. The judgment is affirmed in all respects.

¶ 17 Judgment affirmed.[3]

---

3. Appellees' Application to Tax Costs of Reproduced Record filed pursuant to Pa.R.A.P. 2155, **Allocation of Cost of Reproduced Record,** (b) **Allocation by court,** is hereby **GRANTED.** Appellant's counter Application to Tax Costs of Reproduced Record, also filed pursuant to Rule 2155(b), is **DENIED** as moot.