J-A02017-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JACK FROST CONSTRUCTION, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JASON T. BERTOTHY AND DANA A. | : | |
| BERTOTHY | : | |
| | : | No. 208 WDA 2022 |
| Appellants | : | |

Appeal from the Judgment Entered February 8, 2022
In the Court of Common Pleas of Clearfield County Civil Division at
No(s):  2019-541-CD

BEFORE:   BOWES, J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BOWES, J.:                    **FILED: October 6, 2023**

Jason T. Bertothy and his wife, Dana A. Bertothy (collectively "the Bertothys"), appeal from the $40,5564.26 judgment entered on the verdict in favor of Jack Frost Construction, Inc. ("Jack Frost").  We vacate the judgment and remand for further proceedings.

**I.     Facts and Procedural History**

The certified record supports the following history of this case as outlined in the findings of fact enumerated in the trial court opinion and order entered on August 25, 2021.  In November 2017, the Bertothys contracted with Jack Frost for the construction of a single-family residence ("the Contract").  The Contract, which was negotiated between the Bertothys and

_____

[*]  Retired Senior Judge assigned to the Superior Court.

Jack Frost's owner, Billy Joe Sallurday, specifically referenced, but did not incorporate, a September 12, 2017 estimate ("the Estimate") that outlined a flat fee for materials, plans and labor totaling $480,107.00.[1] The Contract provided that payments were due within ten days of the submission of an invoice and that Jack Frost retained the right to cease work if payments were not timely received. In this vein, the contract included a provision that calculated interest at a rate of 1.5% per month or 18% per year. Neither the Contract nor the Estimate stated a completion date, but a proviso in the Estimate advised that the arrangement was "contingent upon . . . delays beyond [the contractor's] control." Estimate, 9/12/17, at 2.

Over the ensuing year, construction was plagued by delays associated with winter weather, an abnormal amount of rainfall, and the failure of a sub-contractor, namely the Bertothys' son, Trent, to excavate the site, grade the driveway, and dig the trenches for housing electrical and water supply lines. The various delays prompted an ongoing dispute between the parties over the pace of construction and the use and storage of construction materials at the site.

Between the start of the project in November 2017 and July 2018, the Bertothys satisfied all four of the periodic invoices that Jack Frost submitted totaling $122,357.00. However, the Bertothys withheld payment on the fifth

---

[1] While the Contract states the incorrect date of the Estimate, the parties do not dispute that they agreed to the Estimate provided on September 12, 2017.

pay application ("Pay Application No. 5") for $63,060.26 due to what they claimed were unresolved construction defects that they believed Jack Frost had failed to remedy, and because that application requested payment for work that had not been completed. While the trial court ultimately determined that Jack Frost continued to work on the project despite the non-payment of Pay Application of No.5, the parties dispute the amount and pace of construction after July 2018.

On October 4, 2018, the Bertothys' counsel mailed Jack Frost a cease-and-desist letter. Prior to receiving the letter, Jack Frost had partially framed the structure, sheathed the roof, and completed the deck footer, footer, foundation, and plumbing slab. The concrete work was approved by Pennsafe Building Inspection Services, LLC. Within six days of issuing the letter, the Bertothys had the property inspected by David Connelly, a structural engineer, who observed extensive moisture near the foundation, slab, framing, exterior walls, and roof trusses. *See* N.T., 11/5/19, at 102-11, 114-17, 118-19, 120-26, 130-31. Specifically, Mr. Connelly identified, *inter alia*, a wet slab and interior foundation, weather-compromised lumber used in framing and sheathing, and the accumulation of mold and mildew on the floor joists and roof trusses. *Id*. at 108-09, 114-26, 130-31. Overall, he described the prolonged moisture exposure as,

> A lot of wet construction, in a nutshell. Everything seemed to be pretty-well soaked, even the interior. Yes, there was roof sheathing on the structure. There was still water coming through . . . that allowed a lot of water into the interior structure. . . .

- 3 -

[T]he exterior sheathing, really seemed to [have] taken on a lot of water.

*Id*. at 102. The visual inspection was performed approximately six days after Mr. Sallurday was last on the job site and claimed that he observed no moisture-related damage when he left. *Id*. at 138; N.T., 11/4/20, at 48, 70-71.

On April 1, 2019, Jack Frost sued the Bertothys for breach of contract due to their alleged failure to satisfy Pay Application No. 5 in accordance with the Contract. It also sought $13,006.27 for windows that had been purchased in anticipation of installation. The Bertothys' answer and new matter included several counterclaims including breach of contract based upon Jack Frost's alleged failure to perform in a timely and workmanlike manner. The Bertothys also pled violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") sections 201-2(4)(vii), (xiv), and (xxi), which relate to a business's representation of goods and services, compliance with written warranties, and fraudulent or deceptive conduct, respectively.[2]

Following a bench trial over three days between November 2020 and March 2021, and review of the parties' proposed findings of fact and conclusions of law, the trial court found in favor of Jack Frost and awarded it

_____

[2] The Bertothys' counterclaims also included alternative counts of unjust enrichment and negligence. As the Bertothys do not challenge the trial court's rejection of these counts, we do not discuss them herein.

$40,560.26, plus the contractual interest rate, for the unpaid materials and labor costs outlined in Pay Application No. 5.[3]

As to the Bertothys' counterclaims, the court rejected all of the requests for relief, holding: (1) the issue concerning Jack Frost's alleged failure to perform in a timely and workmanlike manner was not ripe because the Bertothys had not permitted the contractor to fix the potential defects associated with the incomplete performance prior to issuing the cease-and-desist letter and taking possession of the worksite; (2) all of the completed work had been performed in a workmanlike manner; and (3) Jack Frost did not engage in any of the alleged conduct that purportedly violated the UTPCPL.

This timely appeal followed the denial of the Bertothys' post-trial motions and the entry of judgment on the verdict. Both the Bertothys and the trial court complied with Pa.R.A.P. 1925.

The Bertothys present seven questions for our review, which we re-ordered for ease of disposition:

> 1. Whether, under relevant law, the trial court erred in permitting an expert witness to testify at trial who [Jack Frost] failed to disclose or identify during discovery.
>
> 2. Whether, under relevant law, the trial court erred in finding [Jack Frost] is entitled to $40,560.26 for labor and materials,

---

[3] While Jack Frost requested $63,060.26 in damages, plus $13,006.27 for the new windows, the court concluded that it only established $40,560,26 of that amount. *See* Trial Court Opinion and Order, 8/25/21, at 7 (holding, Jack Frost did not establish $13,006.27 damages for windows or $22,500.00 in damages for plumbing materials and HVAC equipment that was not used on the project.

without any documentary evidence or business records to substantiate the amount claimed.

3. Whether, under relevant law, the trial court erred in making findings contrary to the evidence presented at trial.

4. Whether, under relevant law, the trial court erred in refusing to consider [the Bertothys'] counterclaim, because the claim was "not ripe."

5. Whether, under relevant law, the trial court erred in finding the implied warranty of reasonable workmanship is limited to latent defects.

6. Whether, under relevant law, the trial court erred in finding the work [Jack Frost] completed was performed in a workmanlike manner, despite also finding the existence of non-latent construction defects.

7. Whether, under relevant law, the trial court erred in failing to rule on undisputed facts that assertedly constitute violations of the Pennsylvania [UTPCPL].

Appellant's brief at 3-4.

The following tenets inform our review.

Our standard of review in non-jury trials is to assess whether the findings of facts by the trial court are supported by the record and whether the trial court erred in applying the law. Upon appellate review[,] the appellate court must consider the evidence in the light most favorable to the verdict winner and reverse the trial court only where the findings are not supported by the evidence of record or are based on an error of law. Our scope of review regarding questions of law is plenary.

*Woullard v. Sanner Concrete & Supply*,, 241 A.3d 1200, 1207 (Pa.Super.

2020) (quoting *Century Indem. Co. v. OneBeacon Ins. Co.*, 173 A.3d 784,

802 (Pa.Super. 2017)).

## II.   Jack Frost's Breach-of-Contract Claim

- 6 -

We begin our review by addressing whether the Bertothys are entitled to a new trial in defending Jack Frost's breach-of-contract claim implicating Pay Application No. 5.

A.     Expert Testimony

The Bertothys' first challenge relates to the trial court's decision to permit the contractor to present expert opinion testimony that was not disclosed during discovery. We review the trial court's determination for an abuse of discretion. *See Pledger by Pledger v. Janssen Pharm., Inc.*, 198 A.3d 1126, 1138 (Pa.Super. 2018) ("The admission of expert testimony is a matter within the sound discretion of the trial court, whose rulings thereon will not be disturbed absent a manifest abuse of discretion." (citation omitted)).

The following facts are relevant to our determination. Prior to trial, the Bertothys filed a motion in *limine* seeking to bar Jack Frost from presenting its construction expert, Philip J. Bosak, because Jack Frost failed to disclose or identify Mr. Bosak during discovery and neglected to claim that any extenuating circumstances caused the nondisclosure.

Pursuant to Pa.R.C.P. 4003.5:

An expert witness whose identity is not disclosed in compliance with subdivision (a)(1) of this rule shall not be permitted to testify on behalf of the defaulting party at the trial of the action. However, if the failure to disclose the identity of the witness is the result of extenuating circumstances beyond the control of the defaulting party, the court may grant a continuance or other appropriate relief.

Pa.R.C.P. 4003.5(b).

The purpose of Rule 4003.5(b) is to promote fairness and allow opposing parties to adequately prepare for trial. **See Clark v. Hoerner**, 525 A.2d 377, 383 (Pa.Super. 1987). In this vein, our Supreme Court has endorsed a four-part test to determine the propriety of admitting previously-undisclosed expert testimony: (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified; (2) the ability of that party to cure the prejudice; (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness in failing to comply with a pre-trial order limiting witnesses to be called to those named prior to trial. **See Feingold v. SEPTA**, 517 A.2d 1270 (Pa. 1986); **see also Gill v. McGraw Electric Co.**, 399 A.2d 1095, 1102 (Pa.Super. 1979) (*en banc*) (citing the same four factors for consideration when deciding whether a witness should be precluded for failing to comply with pre-trial orders). Furthermore, we have defined prejudice as "any substantial diminution of a party's ability to properly present its case at trial," not simply damage to the opponent's case. **Florig v. Estate of O'Hara**, 912 A.2d 318, 325 (Pa.Super. 2006).

Instantly, Jack Frost failed to timely disclose or identify Mr. Bosak as an expert witness in direct contravention of Rule 4003.5. Indeed, although Jack Frost retained Mr. Bosak to inspect the property in 2019, it waited until one

- 8 -

month before trial to disclose him as a witness, expert or otherwise. Moreover, Jack Frost did not provide Mr. Bosak's expert report to the Bertothys until October 20, 2020, two weeks before trial. In addition, Jack Frost neglected to allege any extenuating circumstances that prevented it from disclosing Mr. Bosak's identity during discovery.

Nevertheless, finding that the delay in revealing the expert was not prejudicial to the Bertothys, the trial court denied the motion *in limine* and ultimately permitted Mr. Bosak to testify as a rebuttal witness. The trial court explained its rationale as follows:

> [Jack Frost] provided notice of the intention to call Mr. Bosak as an expert to [the Bertothys] over a month before the trial began, and his report was provided to [the Bertothys] two weeks before trial. Additionally, [the Bertothys] were permitted to confer with their own experts prior to cross-examining Mr. Bosak. Moreover, the [November 2020] trial was extended through March 2021, giving [the Bertothys] an additional four months to prepare any supplementary experts and/or witnesses necessary, or request other relief. [Despite] stating [they] were prejudiced, there has been no showing of actual prejudice suffered by [the Bertothys].

Trial Court Opinion, 12/28/21, at 9.

Considering the several opportunities that the Bertothys had to prepare for their cross-examination of Mr. Bosak, most significantly the extended four-month-delay between the close of the Bertothys' case-in-chief in November 2020 and the witness's eventual rebuttal testimony during March 2021, we do not discern an abuse of discretion in this case. As the preceding discussion illustrates, rigid adherence to deadlines in these circumstances is in tension

with our rules and prevailing decisional law.[4]  While trial courts may preclude an expert from testifying based upon violation of discovery order or deadline, the trial court's decision to permit the testimony in the case was a reasonable exercise of discretion.

B. Weight of the Evidence

The Bertothys' next two issues relate to the trial court's findings of fact concerning Jack Frost's damages of $40,560.26 in labor and materials, the start date, Mr. Sallurday's representations about the anticipated duration of construction, the end date, and the weather problems that hampered construction.  While the Bertothys frame these issues as allegations of trial court error in ignoring what they characterize as uncontroverted facts, their arguments effectively assert that the trial court's findings are against the weight of the evidence.  Critically, the Bertothys do not contend that Jack Frost failed to present evidence of its damages or its representations about the anticipated start, duration, and completion of the project.  Instead, they assail the evidence that Jack Frost adduced as inferior to the evidence that they presented to the trial court.  Hence, they challenge the greater weight of the evidence.

---

[4] *See*, *e.g.*, Pa.R.C.P. 126 ("The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable.  The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties.").

In such cases, our review is exceptionally limited:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

It is not the role of an appellate court to pass on the credibility of witnesses; hence we will not substitute our judgment for that of the factfinder. Thus, the test we apply is not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion.

*Fazio v. Guardian Life Ins. Co. of Am.*, 62 A.3d 396, 413 (Pa.Super. 2012) (cleaned up). "We will respect a trial court's findings with regard to the credibility and weight of the evidence unless the appellant can show that the court's determination was manifestly erroneous, arbitrary and capricious[,] or flagrantly contrary to the evidence." *J.J. Deluca Co.*, *Inc. v. Toll Naval Associates*, 56 A.3d 402, 410 (Pa.Super. 2012) (quoting *Ecksel v. Orleans Const. Co.*, 519 A.2d 1021, 1028 (Pa.Super. 1987)).

In addressing the Bertothys' weight claim, the trial court reasoned as follows:

The findings stated within-this court's opinion and order were based on a full review of the testimony and evidence presented by the parties during the three[-]day trial. . . . No new evidence has been presented which would cause this court to find

- 11 -

the previous testimony and evidence is no longer credible. Only when a verdict is shocking should judgment be entered in favor of the moving party or a new trial granted. . . . Therefore, this court does not find that the verdict is so shocking as to require relief, and in the interests of justice, [the Bertothys'] post-trial motion must be denied.

Trial Court Order and Opinion, 12/8/21/ at 8 (cleaned up).

From this, we conclude that the trial court's failure to find the verdict conscience-shocking was not an abuse of discretion. Thus, the weight claim fails.

## II.  Bertothys' Counterclaims.

Having found no reason to disturb the verdict in favor of Jack Frost, we turn to the Bertothys' three issues relating to the trial court's rejection of their counterclaims against Jack Frost. Essentially, the Bertothys assert that the court erred in concluding that (1) the breach of contract allegations were not ripe absent evidence that they provided the contractor reasonable opportunity to rectify any potential defects associated with incomplete performance; (2) the implied warranty of reasonable workmanship did not apply to obvious defects; and (3) the certified record did not support the trial court's factual finding that Jack Frost performed the contract in a workman-like manner. We address these arguments seriatim.

A. Opportunity to Cure

First, contrary to the trial court's legal conclusion, the Bertothys were not required to provide Jack Frost an opportunity to cure any construction defects. In **Church v. Tantarelli**, 953 A.2d 804, 807 (Pa.Super. 2008), we

noted that there is no common law or statutory rights to cure construction defects in private residential construction projects. We further explained that the prevailing case of **Hood v. Meininger**, 105 A.2d 126 (1954),

> does not stand for the proposition that a plaintiff must establish he gave a contractor a reasonable opportunity to rectify defects in order to establish a cause of action for breach of a construction contract, and no case of which we are aware cites **Hood** for this proposition. Frankly, we are unaware of any case which stands for this proposition. While cure and mitigation are unquestionably relevant to the issue of damages in a contract dispute as a general matter, there is simply no support in our caselaw for th[is] proposition[.]

**Church supra** at 807.

Instantly, neither the Contract nor the Estimate included a right-to-cure clause that required the Bertothys to give Jack Frost notice of alleged defects prior to directing it to stop performance. Hence, the trial court erred in rejecting, as premature, the Bertothys' counterclaim seeking damages for those defects because they did not provide Jack Frost an opportunity to cure.

Second, the court erred in concluding that the Bertothys' breach-of-contract allegations necessarily would fail because the implied warranty of reasonable workmanship did not cover the visible defects that the Bertothys alleged.[5] In reaching this conclusion, the trial court isolated the Bertothys'

---

[5] Modern jurisprudence defines "workmanlike manner," as "doing the work in an ordinarily skilled manner as a skilled workman should do it." PHILIP L. BRUNER & PATRICK J. O'CONNOR, JR., BRUNER & O'CONNOR ON CONSTRUCTION LAW § 9:77 (2022). The warranty is predicated on the founding principle that
*(Footnote Continued Next Page)*

averment stating, "[t]he contract contained an implied warranty that the work would be performed in a reasonable, timely and workmanlike manner." Answer, New Matter, and Counterclaim, 4/29/19, at ¶45. Rather than accepting the statement at face value that the Bertothys expected the work to be performed as agreed, the court interpreted this averment as invoking the implied warranty of workmanlike performance, which it further reasoned applied only to latent defects. **See** Trial Court Opinion, 8/25/21, at 4. The court continued that, since the Bertothys' cause of action alleged obvious, non-latent construction defects, the doctrine did not apply. **Id**. at 6. However, as explained, *infra*, the trial court's fixation with the Bertothys' reference to an implied warranty is misplaced.

Pennsylvania is a fact pleading jurisdiction. **Young v. Lippl**, 251 A.3d 405 (Pa. 2021). Thus, so long as the Bertothys pled facts constituting a breach of contract, they were not required to plead a specific legal theory. As this Court has explained:

> Pennsylvania courts have long-held as a general principal that "plaintiffs should not be forced to elect a particular theory in pursuing a claim" and risk the "possibility that meritorious claims will fail because the wrong legal theory was chosen." **Schreiber v. Republic Intermodal Corp**, 473 Pa. 614, 375 A.2d 1285, 1291 (1977) (citation omitted). "Although a plaintiff is not required to specify the legal theory underlying the complaint, the material facts which form the basis of a cause of action must be

"[a] contractor's failure to perform in a workmanlike manner could result in the rendering of work of little or no value to the contractee and, under the circumstances, no obligation to pay for such services would arise regardless of the parties' failure to express this intention in their agreement." **Id**.

- 14 -

alleged." ***Lampus v. Lampus***, 541 Pa. 67, 660 A.2d 1308, 1312 n.2 (1995).

*Id*. at 419.

Instantly, the Bertothys pled, *inter alia*,

32.   [Jack Frost's] work was not performed in a reasonable, timely and workmanlike manner, the evidence of which includes, but is not limited to:

a.      [Jack Frost] sporadically and sparingly working on the [P]roject;

b.      The improper installation and/or grading of the foundation;

c.      Failing to construct portions of the Project as agreed to by the parties;

d.      Failing to adequately protect the property from water and moisture damage, which includes the growth of significant mildew and mold;

e.      Permitting and/or directing materials to be stored outside, unprotected and exposed to the weather, thereby substantially damaging and compromising said materials;

f.      Installing substantially damaged and compromised materials into the Project;

g.      Improper installation of trusses;

h.      Failing to construct the [p]roperty in accordance with industry standards, laws, and regulations and/or building codes; and

f.      Otherwise failing to complete the [P]roject in a reasonable, timely and workmanlike manner.

Answer, New Matter, and Counterclaim, 4/29/19, at ¶32 and ¶43 (incorporating averments into breach of contract claim).  It is axiomatic that, to the extent that the Bertothys never accepted these obvious defects,

they are not precluded from asserting them as bases for the breach-of contract claim.

As is clear from the foregoing excerpt, the Bertothys pled material facts in support of their claim for a breach of contract based on Jack Frost's allegedly substandard performance. Specifically, the Bertothys contended that Jack Frost failed to perform as expected and as required by the Contract and Estimate that was attached to the complaint. *Id*. at ¶¶ 26-32, 43-39. In this regard, we also observe that the Estimate referenced in the Contract specifically warranted, "All Work to be completed in a professional manner according to standard practices." Estimate, 9/12/17, at 2. Hence, insofar as the Bertothys were not required to invoke a specific legal theory as to their breach-of-contract claim, our review of the pleading bears out that they set forth sufficient material facts to form the basis of that cause of action, notwithstanding the reference to an "implied warranty" to highlight their expectation that the work would be performed satisfactorily. Thus, the trial court erred in ignoring the pleadings and applying law that purportedly limited the potential breach of performance to latent defects as an alternative basis to reject the Bertothys' breach-of-contract claim.

B. Non-latent Defects

The Bertothys also assert that the trial court erred in making the contradictory findings of fact that Jack Frost performed in a workmanlike manner, while also recognizing the existence of non-latent defects. Bertothys'

brief at 27. This assertion invokes the conditional language that the trial court used after stating its position that Jack Frost was precluded from fixing "any potential error or defects prior to [the Bertothys] taking possession of the house[.]" Trial Court Opinion, 8/25/21, at 6. After making that determination, the court continued, "[f]urther, many of the defects, such as water pooling on the basement slab, were not latent defects[.]" *Id*. Notwithstanding the Bertothys' characterization of the trial court's latter reference to "defects" as a genuine finding of fact, the reference actually related to the court's observation of the obvious nature of some of the incomplete work that formed the bases of several of the Bertothys' complaints. Hence, contrary the Bertothys' protestations, the trial court's findings are not in conflict. As the court clearly explained in the "Findings of Fact" section of its opinion: "The work that was complete, was done in a workmanlike manner, and any incomplete work could have been fixed of any defect prior to completion of the house." *Id*. at 2. Accordingly, this assertion is unavailing.

C. UTPCPL Claim

Next, we confront whether "[t]he trial court erred in failing to rule on undisputed facts that assertedly constitute violations of the [UTPCPL]." Bertothys' brief at 33. While the Bertothys' counterclaim alleged that Jack Frost violated 201-2(4)(vii), (xiv), and (xxi), their current argument relates only to the Section 201-2(4) (xxi) "catchall provision which prescribes fraudulent or deceptive conduct which creates a likelihood of confusion or

misunderstanding." *Id*. at 34. Specifically, citing, *inter alia*, discrepancies in Pay Application No. 5 and alleging that Mr. Sallurday represented that construction would be complete in ten months, they contend that "undisputed evidence presented at trial" established that Jack Frost violated the UTPCPL by engaging in deceptive practices or misleading conduct that had a likelihood of confusion or misunderstanding. *Id*. at 34.

In *Gregg v. Ameriprise Financial, Inc.*, 245 A.3d 637, 649 (Pa. 2021), our High Court recently recounted,

> the plain language of the current statute imposes liability on commercial vendors who engage in conduct that has the potential to deceive and which creates a likelihood of confusion or misunderstanding. That is all that is required. The legislature required neither carelessness nor intent when a cause of action is premised upon deceptive conduct.

Thus, the Bertothys are correct insofar as they assert that liability under the catchall provision could arise if they established fraudulent or deceptive practices. However, as discussed *infra*, the certified record disproves their contention that Jack Frost engaged in deceptive or misleading conduct.

In rejecting the Bertothys' UTPCPL claim, the trial court held that they did not support their claim with sufficient evidence that Jack Frost specified a completion date or that they had any reason to disregard the clear language in the contract documents that completion was contingent upon delays beyond the contractor's control. *See* Opinion and Order, 8/25/21, at 6. The court reasoned that it would be irrational for the Bertothys to believe that home construction that starts on the eve of winter would not experience weather-

related delays. *Id*. The court further noted that some of the delays were attributable to the Bertothys' son, the excavation contractor, whom the Bertothys specifically requested perform work under the contract. *Id*. at 7. In its ensuing Rule 1925(a) opinion, the trial court expounded that the Bertothys also failed to establish that Jack Frost violated its warranty of reasonable workmanlike manner prior to receiving the cessation letter or that it misrepresented the quality of work that it would perform. Thus, the court found that the Bertothys failed to establish a violation of §201-2(4)(xxi) catchall provision. For the following reasons, we agree.

First, as it relates to the Bertothys' claim that Jack Frost billed them for work that it had not yet completed, the certified record reveals that Jack Frost purchased the plumbing and heating equipment identified in Pay Application No. 5, and immediately incurred liability to pay for it. N.T., 11/4/20, at 43. Thus, the cost of the equipment was properly billed to the Bertothys. However, after the Bertothys failed to satisfy Pay Application No. 5 and directed Jack Frost to stop construction at the site, the contractor was able to cancel the order and recoup that expenditure. *Id*. at 43-44. In light of this explanation, the record supports the trial court's decision to reject the Bertothys' claim that Jack Frost's July invoice billed for incomplete work in contravention of the UTPCPL provision protecting consumers from a contractor's deceptive or misleading conduct.

Similarly, as noted earlier in this memorandum, despite allegations that Mr. Sallurday represented that the home would be completed within approximately ten months to one year, the record evinces that the parties never discussed a completion date beyond Ms. Bertothys' initial desire to be completed by Christmas 2018. *Id*. at 27. However, at the preliminary stage when the contract was formed, it was impossible for Mr. Sallurday to guarantee a completion date. *Id*. More importantly, the Contract did not state a completion date and the September 12, 2017 Estimate, whose legitimacy is undisputed, anticipated possible weather delays beyond the contractor's control, *i.e.* "All agreements contingent upon . . . delays beyond our control." As the certified record will not sustain the Bertothys' complaint that Jack Frost promised to complete the residence by a certain date, this alleged violation of the catchall provision fails.

The Bertothys' remaining assertions of confusion and deceit concern the start date and the composition of Jack Frost's work force, respectively. As to the former, the Bertothys contend that Jack Frost started construction prior to executing the contract documents. However, the alleged "work" consisted entirely of a one-day site investigation, which the contractor performed with the Bertothys' assistance. *Id*. at 99, 101. During the trial, Mr. Sallurday explained: "We met with Jason and Dana to locate the house, locate the septic, to find out where the utilities would come in." *Id*. at 99. This preliminary investigation with the cooperation of the Bertothys is not

tantamount to construction work and it does not establish a likelihood of confusion and misunderstanding under the UTPCPL.

In relation to the latter contention concerning the composition of the Jack Frost work force, again, the record contradicts the Bertothys' assertion that Jack Frost was not a legitimate construction company because it relied substantially on child labor. *See* Bertothys' brief at 35. The three minors that this argument references, Mr. Sallurday's teenaged nephew, grandson, and family friend, worked an aggregate total of 463 hours on the project in accordance with state regulations and under the supervision of a construction worker with approximately fifty-seven years of experience. *See* N.T., 11/4/20, at 29, 115-16. Furthermore, due to the nature of carpentry and framing, the composition of the five-man work crew was typical for a project like the Bertothys' home, which used prefabricated walls, because superfluous laborers would increase the cost of construction unnecessarily. *Id*. at 29-30. Moreover, as Mr. Sallurday explained in relation to the minors' job-site activities, they "use nails . . . [a]nd screw guns, [which] they are allowed to use[.] Battery-operated tools, they're still allowed to use battery-operated tools, just not power tools." *Id*. at 116. Hence, discounting the Bertothys' disingenuous inference that Jack Frost exploited child labor, the size and composition of the construction crew was in no way deceptive or misleading in violation of the UTPCPL.

Overall, because there was sufficient evidence to support the trial court's finding that the Bertothys failed to establish liability under the catchall section of the UTPCPL, this issue must fail. Sufficient facts presented at trial demonstrated that Jack Frost did not make any misrepresentations to the Bertothys or act in a manner that would constitute deceptive or misleading conduct. Insofar as the certified record supports the trial court's determination that the claimed representations and conduct did not create a likelihood of confusion or misunderstanding, no relief is due.

Thus, as it relates to the three issues concerning the denial of the Bertothys' counterclaims, we conclude that the trial court erred in finding that the breach of contract claim was not ripe absent evidence that the Bertothys provided the contractor reasonable opportunity to rectify any potential defects associated with incomplete performance. Accordingly, the Bertothys are entitled to have the trial court decide the merits of that counterclaim based upon the evidence presented at trial.[6] Namely, the trial court must decide whether Jack Frost was in breach of contract and whether the Bertothys incurred any breach-related damages prior to October 4, 2018, the date that they ordered the contractor off the site.

**IV.    Conclusion**

---

[6] As both parties had a full and fair opportunity to present evidence to the trial court during the three-day hearing, a new trial is not warranted.

In summary, we affirm the $40,560.26 verdict in favor of Jack Frost and do not disturb the trial court's conclusion that the Bertothys failed to establish a claim for relief pursuant to the UTPCPL or its finding that the work Jack Frost completed prior to its dismissal was performed in a workmanlike manner. However, for the reasons discussed above, we vacate the judgment entered on the verdict and remand the matter for the court to address the Bertothys' breach-of-contract counterclaim based on the evidence presented at the trial. If the Bertothys ultimately prevail on this counterclaim, the trial court is directed to offset the relative verdicts and, upon praecipe of one of the parties, enter judgment in favor of the party with the net verdict.

Judgment vacated. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 10/6/2023